## CIRCUIT COURT OF THE CITY OF RICHMOND

Kristin M. Baird

v.

Virginia Commonwealth University

Case No. HG-1343-3

Ross Sugar

v.

Virginia Commonwealth University

Case No. HG-1322-1

Tiffini M. Regis

v.

Virginia Commonwealth University

Case No. HG-1308-1

June 17, 1996

By Judge Melvin R. Hughes, Jr.

These are three cases involving students who attend medical school at the Medical College of Virginia (MCV). They have requested and been denied in-state tuition status. If allowed such status, the three would be treated as Virginia domiciliaries under Va. Code § 23-7.4 and thereby be entitled to reduced tuition costs. Under the same code section, they have a right to petition the court for review of the decisions denying their re-

quests. They have exerted that right, and their cases are now before the court for review.

The court on review is confined to determining on the record whether the decision is supported by substantial evidence and is not arbitrary and capricious. See § 23-7.4(C). The statute also sets a presumption against in-state status as follows:

> A matriculating student who has entered an institution classified as out-of-state shall be required to rebut by clear and convincing evidence the presumption that he is in the Commonwealth for the purpose of attending school and not as a bona fide domicile.

The General Assembly has prescribed in § 23-7.4(B) ten factors to determine domiciliary intent:

> In determining domiciliary intent, all of the following applicable factors shall be considered: continuous residence for at least one year prior to the date of alleged entitlement, state to which income taxes are filed or paid, drivers license, motor vehicle registration, voter registration, employment, property ownership, sources of financial support, location of checking or passbook savings accounts and any other social or economic relationships with the Commonwealth and other jurisdictions. Domiciliary status shall not ordinarily be conferred by the performance of acts which are auxiliary to fulfilling educational objectives or are required or routinely performed by temporary residents of the Commonwealth. Mere physical presence or residence primarily for educational purposes shall not confer domiciliary status.

The respondent, Virginia Commonwealth University (VCU) does not challenge that all petitioners are not dependent persons. VCU contends that simply meeting all ten factors is not enough because there is a presumption against in-state status. The test, VCU contends, is whether reasonable persons could have reached the same decisions the VCU/MCV Residential Appeals Committee did to deny in-state status in the cases.

After considering the records of each petitioner against the statutory requirements, the court finds that each is entitled to in-state tuition status. The facts and circumstances in each case do not justify by substantial

evidence the decisions to turn down in-state status and are arbitrary and capricious.[1]

The period of time under scrutiny in each case is one year immediately preceding August, 1995. Before proceeding to examine each petitioner's circumstances the court agrees, in view of the record and the position VCU has taken, that as a general matter each petitioner has met most if not all the listed factors to be considered for domiciliary status. The question remaining, the one that VCU has raised, is whether complying with the listed items is enough to override the statutory presumption against in-state status in the cases. The court finds that here the presumption has been overcome in each of the circumstances.

### Baird

Baird enrolled at the MCV in August, 1994. She came to Virginia from Washington State in July of that year with her husband, who at the time was finishing a five year military obligation with the Navy. Baird had applied to several medical schools including MCV. After being accepted at MCV, Baird's husband was discharged from the armed forces soon thereafter. Before their arrival, Baird's husband made attempts to become employed in Richmond but without success. After the couple arrived in Richmond, her husband began seeking employment and was not successful until Baird had been enrolled one semester at VCU. The couple later purchased a home in Richmond in May, 1995 pursuant to a lease-purchase contract they entered into soon after coming to Richmond. She testified that she and her husband want to stay in Virginia because they like the area and because her husband has found employment with a local company. Her husband has stated in a letter that he had decided to live in Richmond to pursue his post-military career, because it is close to friends and family, because Richmond is close to a naval reserve training center in Norfolk, and because the area has other attributes to his liking that make it conducive as a good place to settle down. Baird has not yet determined where she will do her residency training although she hopes she can do this in Virginia.

---

[1] In each of the cases under consideration the petitioners were first granted in-state treatment. Each decision was later overturned. This action was not considered as the review of those cases must be confined to the record under the standards maintained.

## Sugar

Sugar enrolled at MCV in August, 1994. Prior to being accepted to medical school, Sugar and his wife purchased an old house in Petersburg, Virginia, in 1990 and proceeded to renovate and restore it. At that time the couple had a home in Baltimore, Maryland. After about two years into the Petersburg house restoration effort, Sugar decided to go to medical school. He applied to several medical schools including Johns Hopkins in Baltimore but was not accepted there. Sugar testified he applied to MCV in Virginia "because we were building a house down there or renovating a house." When MCV accepted him, he testified, he withdrew all other applications to other schools "because of our long-time goal of living in the Richmond area." Sugar did not live in the Petersburg property until 1994, after he was accepted at MCV. Since living in Virginia, in Petersburg, attending medical school in Richmond, Sugar and his wife have had two children, one of whom was born here. They have since sold their home in Petersburg and moved to Richmond to be closer to the medical school. His wife is employed with a local company at its national headquarters in Richmond.

Before moving to Virginia from Maryland to attend medical school, Sugar was a computer consultant living and working in the Baltimore area. He testified he could not move to Petersburg to live in the house acquired there in 1990 because it was not "liveable" until after he was accepted at MCV. He stated he wanted to move to Virginia before then but could not due to the condition of the Petersburg property.

## Regis

Regis enrolled at the medical school at MCV in July, 1994. She was born in Prince George County, Virginia. She lived in the Petersburg area up to high school and remained in Virginia up to that time even though her parents had moved to New Jersey earlier. She attended the University of Maryland on scholarship directly after high school. While attending college, she applied to several medical schools including MCV and was admitted. She stated she wanted to return to Virginia as she considers Virginia her home, where she continues a church affiliation in Petersburg and intends to be married at that church in June, 1996. Even though her parents resided in New Jersey during her college years, Regis considered herself "independent" and did not rely on them for support. She visited them from time to time and she visited her grandparents in Roanoke and

other relatives in Northern Virginia as well during her years in college. She does not own real estate in Virginia.

## Conclusion

With the exception of Regis, if the focus is on the petitioners' actions leading up to admission, the idea of their having domiciliary intent is problematical. Faced with the prospect of admission to any one of several medical schools in different states they have all applied to, this makes it difficult to maintain that, at that time, they intended to be Virginia domiciliaries, despite their statements to the contrary. With the exception of Regis, they have no history of residency in Virginia. But the determination of domiciliary intent must be determined from the time he or she applies for such status. The evidence of domicile must have existed for "at least one year prior to the date of the alleged entitlement," under § 23-7.4(C).

While VCU does not question the petitioners' meeting most if not all the listed factors to be considered on domiciliary intent, in addition to contending that under the review standards involved the admissions committee decisions should not be subject to challenge as ones reasonable minds could make, VCU also advances that the petitioners' credibility was a factor that only the committee could, by necessity, determine. The court agrees with this assessment. But the facts in the record demonstrate that whatever consideration one might give to whether the petitioners' statements are believable, they have complied and done the things necessary to evince an intent to remain in Virginia indefinitely along with continuous residence for one year. The acquisition of property, as personal residences in Baird's and Sugar's cases and Regis' nativity and residency in Virginia immediately prior to college and her return after college, are factors of considerable weight in the court's determinations. Because the circumstances in each of the cases demonstrate domiciliary intent, the court decides that the decisions to turn down each of the applications were arbitrary and capricious and will be overturned.

Mr. Roberts is directed to prepare and submit suitable drafts for orders granting in-state status to each petitioner with a provision for noting MCV's exceptions.